## Supreme Court—General Term—First Department.

*December, 1886.*

## PEOPLE v. McGRATH.

### CHARGE OF JUDGE.

Where two defendants are on trial together for the same offence, it is error for the trial judge to charge the jury " if one is convicted both should be " " your verdict should be guilty or not guilty as to both defendants." Among other objectionable features this charge prevents the jury from entertaining a reasonable doubt of the guilt of one defendant if they have no such doubt as to that of the other.

APPEAL by defendants John M'Grath and Mary M'Grath, from a judgment of the Court of General Sessions of New York, Hon. Henry A. Gildersleeve presiding, of June 15. 1886, convicting defendants of arson in the second degree

The following facts which are given somewhat fully, as illustrating the charge of the judge upon the trial :

The dwelling-house which was alleged to have been set on fire by defendants was a double tenement-house in the City of New York, known and designated by street number as No. 528 West Thirty-ninth street. It was divided into many apartments, some of which were occupied by families in the house at the time of the discovery of the fire. The fire occurred on the 25th of March, 1886, in the basement apartment, consisting of three rooms, occupied by the defendants as tenants from month to month, the front room as a grocery store conducted by them, and the other rooms as a sitting-room, a bed-room and kitchen. The fire was discovered by a woman who lived in the adjoining building, No. 530 West Thirty-ninth street, her attention thereto having been attracted by the smell of smoke, about three o'clock in the afternoon of that day. In response to the alarm given by her, the janitor, firemen and others came. One of the doors was forced open and the fire was extinguished before it had made much headway. One of the partitions and some of the flooring were charred and burnt. It was found that most thorough and systematic incendiary preparations had been made. The rooms were deserted, the windows securely fastened from the inside, the back door was cleated, an old, imperfect door was braced from the inside, and the two main doors were locked. In a corner of one of the rooms was found a barrel of fine kindling-wood—not such as is usually sold in stores, but small pieces of boards, etc., saturated with kerosene oil—and next to this barrel was a milk-can with kerosene oil in it. In the sitting-room was found a bunch of kindling-wood lying on the floor with a candle' sticking in it. The candle was not in a candle-stick, but was stuck upright in the bundle of wood, which smelled of kerosene oil. The candle had not then burned quite down to the wood, about an inch or an inch and a half remaining still unconsumed. This bundle of wood was placed in a paper bag saturated with oil, and was found under or near a lounge. The whole place was pervaded with strong odors of kerosene.

Defendants had rented and occupied the premises since the

previous 15th February, paid rent in full from February 15th to March 15th, and on March 15th, paid a half month's rent only; at the time of the fire the furniture in their apartments, which was worth but $85.40, they had insured for $400; the store fixtures and furniture worth but $46.10, they had insured for $100, and the stock of merchandise, worth but $63.52, they had insured for $500. At 8 o'clock in the morning of the fire, after securing, fastening and locking their apartments in the manner in which they were found when the fire was discovered and entrance forced as aforesaid, they left and did not return until late at night (11 o'clock), when they were both arrested and taken to the station-house upon the charge of arson. When taken to the station-house the policy of insurance (in the name of defendant Mary) upon the property aforesaid and all their other valuable papers were found upon the person of the defendant John McGrath, and it was not claimed that the papers had been needed for the purpose of the business which they say had taken them that day to New Jersey. There was no evidence tending to show that any one had entered the premises between the time defendants left in the morning and the time the fire was discovered in the afternoon, save the testimony of the defendants themselves to the effect that after they had started, the defendant John returned and got a flask of whisky they had left on the counter, but remained only a moment (not long enough to perfect the incendiary arrangements aforesaid).

The trial judge charged the jury, among other things, as follows: "The answer the defendants make is this: 'We were the tenants of the premises in question at the time. It appears that there was a fire. We are not prepared to deny that it was the work of an incendiary; we do not know anything about it except what the evidence discloses. We left the premises at eight o'clock in the morning, having closed the windows and doors, which were in their usual condition, and these evidences of incendiary acts were not placed there by us. Some person or persons unknown to us must have put the wood in the sitting-room where it was found by the

lounge with the candle in it, distributed the kerosene about, and committed the other evidences of incendiary acts; we did not." Therefore, while not denying that the offence was committed, the answer is, ' We are not guilty; we did not do it.' The only evidence tending to show that they did commit the act is circumstantial, as you have already observed; and the claim by the learned and experienced counsel for the defendants is that the circumstances are not of such a character as to justify a conviction. That is a question of fact for you to decide under the instructions I shall give you. The gentleman stated the law correctly. In cases of circumstantial evidence, the circumstances must be of such a character as to point beyond all mistake toward the guilt of the accused. If the jury can reasonably account for the existence of the circumstances which it is claimed are the basis of an inference of guilt, if they can account for them upon the theory of innocence, it is the duty of the jury to do it, as reasonable men in the exercise of your good common sense, that is all that is expected of you. There are no mysteries about the law, and no mysteries about the labors of jurors. You are to apply to the questions that come before you the same good common sense and judgment under the law as you would in the discharge of your own duties in your every-day business. If you can account for the condition of things there—because the circumstances, the collateral facts, are simply evidences of the condition of things—if you can account for the happening of those upon the theory of the defendants' innocence, it is your duty to do it; in other words, if you can reasonably see how some person or persons, other than the defendants, may have committed these acts, then you must acquit the defendants."

" If the condition of things indicating incendiarism were not placed there by the defendants, somebody entered the premises in their absence through the front door by means of some false or duplicate keys or in some way that does not appear, and placed the wood and the candles in the order as they were subsequently found. There has been no special claim

made in reference to the wife in this case. It is claimed by the defendants' counsel that they are both innocent; and it is fair to say, under the evidence, if one is convicted both should be. The property belonged to the wife; the insurance was in her name. There is a presumption, however, that where the husband and wife are charged with the commission of the same offense, provided the acts are committed in the presence of the husband, that whatever the wife does is by the coercion of the husband. It is a presumption that can be rebutted by showing that she acted on her own responsibility, without any special order or direction of the husband. There was some evidence tending to show in this case that the husband returned. There was evidence to show that after he and his wife had left the premises, he returned to get some whisky—he says, ' but for a moment. We forgot this, he went back and opened the door, picked it up and came immediately away.' There is no evidence that he did remain any longer than he says he did. I think his evidence was the only evidence that he returned alone to the place. If it had appeared that he returned alone and was there a considerable time, there might be a presumption that whatever was done, he did. There was no evidence that he was there long enough alone by himself to create the condition of things that was discovered. Therefore, I must say to you that your verdict in this case should be guilty or not guilty, as to both defendants. The circumstances are substantially the same as to both."

*Howe & Hummel*, for defendants, appellants.

*Randolph B. Martine*, district attorney, and *McKenzie Semple*, assistant, for the people, respondents.

BRADY, J.—The evidence by which the people essayed to sustain the charge made against the appellants was circumstantial,—a usual feature, it may be said in prosecutions of this kind. But it was insisted upon the close of the evidence for the prosecution, that although there was sufficient to justify the court in submitting the case to the jury upon the question of whether or not the fire

was of incendiary origin, nevertheless there was not sufficient evidence to connect the appellants with the fire: a very essential element of the prosecution, for the reason that the jury were not only to find whether the fire was of incendiary origin, but whether the defendants were the incendiaries, and, being such, were guilty of the offence alleged against them. And it is insisted by the appellants that, on the evidence, and therefore, upon the merits, the verdict is against law and unjust. It is not necessary, however, to consider that proposition in detail, for the reason that an error was committed by the learned justice in charging the jury, in consequence of which a new trial must be granted. Upon the argument of this appeal such was the impression and it has been confirmed by a subsequent examination and consideration of the case and of the charge.

The court charged the jury as follows: " There has been no special claim made in reference to the wife in this case. It is claimed by the defendant's counsel that they are both innocent ; and it is fair to say, under the evidence, if one is convicted both should be."

The learned justice, it is thought, was not justified, in the administration of his office, in saying to the jury that their verdict should be guilty or not guilty as to both defendants, because that involved the proposition that no matter what might be the evidence in the case, no matter whether an equal amount of criminality or not was established by a proper estimate of the evidence, the jury had a right to convict both.

It may be assumed that if the jury believed the husband guilty and the wife innocent or *vice versa*, as suggested by the learned counsel for the appellants, they would, under the charge, desirous of obeying their oaths, convict both, being unwilling to permit the guilty one to escape.

The learned judge subsequently charged that when husband and wife were arraigned for the commission of the same offense, if the acts constituting it were committed in the presence of the husband, a legal presumption existed that she was acting by his coercion ; although it was a presumption

that could be rebutted by the proof that she in fact acted upon her own responsibility. He then, after briefly discussing a part of the evidence, repeated the charge saying : "Therefore, I must say to you that your verdict should be 'guilty' or 'not guilty' as to both defendants."

No view of the case, either upon the facts or on the law by which it is governed, furnishes any legal reason or rule by which this charge can be sustained.

Among other objectionable elements by which it is surrounded may be stated the ignoring of the rule as to reasonable doubt, which might well be applied by the jury, in the exercise of their judgment, to the one and not to the other of the appellants, and yet, under the charge, both would have to be declared guilty. It is impossible for us to say that this direction did not prejudice the appellants or one of them. The duty of finding both guilty or both innocent was so impressed upon the jury that they could not have failed to understand it as an imperative obligation.

For these reasons the judgment of conviction must be reversed and a new trial ordered.

DANIEL J., concurs.

## Court of Appeals.

### October 1886.

## Supreme Court—General Term—Fourth Department.

### July, 1886.